HERNANDEZ v FORD MOTOR COMPANY

Docket No. 277811. Submitted August 12, 2008, at Detroit. Decided September 2, 2008, at 9:05 a.m. Leave to appeal sought.

Maria Del Socorro Herrera Hernandez, as personal representative of the estate of Jose Francisco Martinez Villalon, deceased, brought an action in the Wayne Circuit Court against the Ford Motor Company, seeking damages related to the decedent's death in an automobile accident that occurred in Mexico while the decedent was a passenger in a vehicle manufactured by Ford in Missouri and allegedly designed in Michigan. The plaintiff is a Mexican citizen, as was the decedent, her husband. The vehicle was purchased in Mexico and remains there, available for inspection. Ford moved to dismiss the complaint on the basis of forum non conveniens, alleging that the action should be brought in Mexico. Ford stipulated that it would submit to the jurisdiction of the Mexican courts, abide by their rulings, and pay any final judgment. The court, Cynthia D. Stephens, J., entered an order denying Ford's motion. The Court of Appeals, WHITE, P.J., and TALBOT and KELLY, JJ., held Ford's application for leave to appeal in abeyance pending the Supreme Court's decision in *Radeljak v DaimlerChrysler Corp*, 472 Mich 924 (2005), and granted Ford's motion for a stay. Unpublished order of the Court of Appeals, entered December 5, 2005 (Docket No. 264910). After the Supreme Court decided *Radeljak*, 475 Mich 598 (2006), the Court of Appeals, WHITE, P.J., and TALBOT and KELLY, JJ., in an unpublished order, entered August 2, 2006 (Docket No. 264910), in lieu of granting the application, vacated the trial court's order that denied the motion to dismiss and ordered the trial court to provide on remand an expanded analysis that addresses the competing arguments of the expert witnesses, taking into account *Juanes v Continental Tire North America, Inc*, an unpublished memorandum opinion of the United States District Court for the Southern District of Illinois, issued September 26, 2005 (Docket No. 05-4015-JLF), 2005 WL 2347218, and reconsidering all the factors for determining a forum non conveniens question listed in *Cray v Gen Motors Corp*, 389 Mich 382 (1973), in light of the Supreme Court's decision in *Radeljak*. The Court of Appeals also vacated the stay that it had imposed. On remand, the trial court again determined that the

case should not be dismissed on the basis of forum non conveniens. The Court of Appeals, ZAHRA, P.J., and WHITE and WILDER, JJ., granted Ford's delayed application for leave to appeal in an unpublished order, entered September 6, 2007 (Docket No. 277811).

The Court of Appeals *held*:

1. A plaintiff can successfully bring a cause of action in Mexico by complying with the applicable procedural rules. Although territorial jurisdiction in Mexico generally requires that a defendant be domiciled within the court's jurisdictional territory, such jurisdiction may be waived or extended when a defendant is outside the court's territorial competence and there is a point of contact within the forum. Mexico appears to be an available forum to hear this case if Ford agrees to submit to jurisdiction in Mexico. The trial court abused its discretion in deciding that Mexico was not an available forum for this action.

2. Although the trial court considered each of the *Cray* factors, it did not also consider the effect of the *Radeljak* decision, in which the Supreme Court stated that dismissal may be warranted if a plaintiff chooses a particular forum solely to take advantage of the forum's more favorable law rather than because it was convenient, determined that a foreign plaintiff's choice of forum should be given less deference than would be accorded to a domestic plaintiff, and concluded that a court has the discretion to refuse to hear a case even if the Michigan court was not seriously inconvenient.

3. Four of the *Cray* factors relating to the private interest of the litigant are neutral and three of the factors favor a Mexican forum. The private interest factors favor dismissal in the Michigan forum.

4. All three of the *Cray* factors relating to matters of public interest favor a Mexican forum.

5. The *Cray* factor concerning the promptness in raising the plea of forum non conveniens is neutral.

6. A balancing and weighing of the *Cray* factors shows that Mexico is the more appropriate forum. Because Mexico is an available forum and the *Cray* factors favor Mexico, the trial court's decision was not within the principled range of outcomes. The trial court abused its discretion by denying Ford's motion to dismiss on the basis of forum non conveniens. The trial court's order must be reversed and the matter must be remanded for the entry of an order dismissing the plaintiff's cause of action.

Reversed and remanded.

*Michael Langnas* and *Merritt & Associates, P.C.* (by *John M. Merritt*), for the plaintiff.

*Bowman and Brooke LLP* (by *Norma M. Gant, Jeffrey T. Gorcyca,* and *Dana M. Hathaway*) (*Craig A. Morgan,* of counsel) for the defendant.

Before: MURRAY, P.J., and WHITBECK and TALBOT, JJ.

PER CURIAM. This product liability action brought by the plaintiff, Maria Del Socorro Herrera Hernandez, as personal representative of the estate of Jose Francisco Martinez Villalon, deceased, arises from an October 5, 2002, rollover automobile accident in Tabasco, Mexico, involving a 1996 Ford Explorer. The decedent, plaintiff's husband, was fatally injured in the accident. The trial court denied defendant Ford Motor Company's (Ford) motion to dismiss on the basis of forum non conveniens. Ford filed an interlocutory application for leave to appeal that order, and this Court, in lieu of granting the application, vacated the order and remanded for further proceedings. On remand, the trial court again denied Ford's motion to dismiss on the basis of forum non conveniens. Ford now appeals by delayed leave granted, and we reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a Mexican citizen, as was her husband. According to a police report, the accident at issue was a single-vehicle accident, in which the driver of the Explorer was driving above the speed limit without a driver's license. Villalon was a passenger in the Explorer and died as a result of the accident. The Explorer was manufactured in a plant in Missouri and was allegedly designed in Michigan. Hernandez indicates

that the Explorer was sold in Mexico and remains in Mexico, available for inspection.

Ford moved to dismiss Hernandez's complaint on the basis of forum non conveniens. Hernandez and Ford each presented affidavits from experts on Mexican law, who differed on whether Mexico was an available alternative forum.

Hernandez's expert, Leonel Pereznieto-Castro, submitted a declaration explaining that there were different evidentiary and legal standards in Mexico, long delays of at least two or three years, and no contingency fees. Pereznieto-Castro explained that the defendant's domicile was usually the appropriate forum under Mexican law and that he believed the appropriate forum in this case was the United States, where the product was designed and manufactured. He further alleged that Mexican courts would refuse jurisdiction in a case against a defendant who was not domiciled in Mexico. Pereznieto-Castro averred that, after *Garcia v Ford Motor Co*[1] and *Torres v Ford Motor Co*[2] were dismissed by courts in the United States because of forum non conveniens, they were refiled in Mexico but dismissed by the Mexican courts for lack of jurisdiction, even though the Mexican courts were aware that Ford had consented to their jurisdiction. Pereznieto-Castro also explained that damages awards were not as good in Mexico as in the United States, that there was no strict liability under Mexican law, and that there was a higher standard for recovery in Mexico.

---

[1] *Garcia v Ford Motor Co*, unpublished memorandum opinion of the United States District Court for the Eastern District of Missouri, issued July 7, 2003 (Docket No. 4:02CV001319 RWS).

[2] *Torres v Ford Motor Co*, Civil Court in the District of Leon, Guanajuato, Mexico, Case No. 648/04-C (November 16, 2004), aff'd on appeal in the Supreme Court, Guanajuato, Mexico (January 31, 2005).

Ford's expert, Roberto S. Genis Gonzales Mendez, averred that Mexico's legal system is "equal to that of most developed countries," and that it provides due process and free access. Genis Gonzales Mendez averred that Hernandez had several available options under Mexican law and that the case would be resolved in 16 months to two years.

Ford acknowledged that under Mexican law a foreign defendant must submit to the jurisdiction of both the Mexican court and a specific Mexican judge in order to consent to jurisdiction. Ford submitted an affidavit from Professor Jose Maria Serna de la Garza, who explained that, in *Garcia*, Ford was never given notice of the filing of the case in Mexico and, therefore, did not submit to the jurisdiction of a specific judge, and that if it had so submitted, the case would have been accepted. Serna de la Garza explained that *Torres* was dismissed because the basis of the accident—the design and manufacture— occurred in the United States. *Torres* was affirmed on appeal to the Guanajuato, Mexico, Supreme Court, but Serna de la Garza explained that the appellate decision offered no real guidance because it affirmed the dismissal of the plaintiff's case on the ground that the appeal was procedurally deficient, the decision did not include any analysis of the possible theories, and the court did not mention whether Ford submitted to the jurisdiction of the Mexican court and judge.

Ford stipulated that it would submit to the jurisdiction of the Mexican courts, abide by their rulings, and pay any final judgment. (Ford asserts on appeal that it also stipulated that it would make evidence available.)

The trial court ruled as follows:

> Faced with two experts who don't agree and one case which says that jurisdiction was not properly in Mexico, further being told that at best the parties can agree by

contract, which there is none, or other agreement, which there was none prior to the filing of this lawsuit, this Court would find first and foremost that Mexico is not an alternative forum for this products case. But because I know we're going to end up in the Court of Appeals, I will go through the Cray[3] factors as well.

\* \* \*

This Court does not find that there is a substantial inconvenience looking at the Cray factors. In fact, things are relatively equal. . . .

The Court would decline to dismiss, finding first that there is no alternative forum in Mexico for this product liability case, and secondly, finding that each—even if there were, the Cray factors considered that forum non conveniens does not apply.

The trial court entered an order on August 16, 2005, denying Ford's motion.

Ford filed an application for leave to file an interlocutory appeal in this Court and a motion for a stay. This Court granted a stay and ordered the matter held in abeyance pending the Michigan Supreme Court's decision in *Radeljak v Daimler-Chrysler*.[4] In August 2006, after *Radeljak* was decided,[5] this Court, in lieu of granting leave to appeal, vacated the trial court's August 16, 2005, order, ordering the trial court to "provide an expanded analysis that addresses the competing [expert witness] arguments," taking *Juanes v Continental Tire North America, Inc*,[6] into consideration, and reconsid-

---

[3] *Cray v Gen Motors Corp*, 389 Mich 382, 396; 207 NW2d 393 (1973).

[4] *Radeljak v DaimlerChrysler Corp*, 472 Mich 924, 924-925 (2005).

[5] *Radeljak v DaimlerChrysler Corp*, 475 Mich 598; 719 NW2d 40 (2006).

[6] *Juanes v Continental Tire North America, Inc*, unpublished memorandum opinion of the United States District Court for the Southern District of Illinois, issued September 26, 2005 (Docket No. 05-4015-JLF), 2005 WL 2347218.

ering "all of the *Cray* factors in light of *Radeljak v DaimlerChrysler*[.]"

On remand, the trial court briefly stated the facts of the underlying case and then considered a number of the *Cray* factors, again ruling that the case should not be dismissed under a forum non conveniens analysis. The trial court made no mention in its decision of *Radeljak, Garcia, Torres,* or *Juanes,*[7] the cases that this Court had instructed the trial court to consider on remand.

## II. MEXICO AS AN AVAILABLE FORUM

### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision whether to dismiss a case on the basis of forum non conveniens.[8] An abuse of discretion occurs when the trial court's "decision results in an outcome falling outside the principled range of outcomes."[9]

### B. ANALYSIS

Forum non conveniens is a common-law doctrine defined as "the 'discretionary power of court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum.' "[10] As the Supreme Court

---

[7] Pereznieto-Castro gave expert testimony in *Juanes*, which involved one of several United States federal court dismissals based on forum non conveniens, with a "return jurisdiction" provision in the event the plaintiff's complaint was rejected by the Mexican court. *Juanes* is not developed by either party on appeal.

[8] *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

[9] *Id.*

[10] *Id.* at 604, quoting Black's Law Dictionary (6th ed).

of Tennessee explained in *Zurick v Inman*,[11] the "doctrine of forum non conveniens presupposes the court has jurisdiction of both the parties and the subject-matter. The doctrine also presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action[.]"

Here, the trial court indicated in its first order that application of the *Cray* factors was not required in this case because Mexico was not an available forum for Hernandez's cause of action. This Court vacated the trial court's order and remanded the case, explaining:

> The trial court's ruling that Mexico is not an alternate forum was too conclusory for this Court to sufficiently review, especially in light of the competing lengthy affidavits and arguments advanced by the parties. Therefore, the trial court is directed to provide an expanded analysis that addresses the competing arguments, and in doing so, shall consider *Juanes v Continental Tire North America, Inc*, 2005 WL 2347218 (SD Ill, 2005) regarding the impact of the *Garcia* and *Torres* decisions on the issue at hand in this case.[12]

On remand, the trial court did not specifically revisit whether Mexico was an alternate forum and did not consider or revisit the *Juanes* cases. However, in the context of addressing the *Cray* factors, the trial court did state that "[t]he Court was more persuaded by the assertion of the plaintiff's expert that even if Ford agrees to submit to the jurisdiction of the Mexican Court, the Mexican Courts are not obligated to take jurisdiction over the case."

This mirrors the reasoning in the trial court's initial order, in which it concluded that Mexico was not an

---

[11] *Zurick v Inman*, 221 Tenn 393, 402; 426 SW2d 767 (1968).

[12] *Hernandez v Ford Motor Co*, unpublished order of the Court of Appeals, issued August 2, 2006 (Docket No. 264910) (*Hernandez I*).

available forum for Hernandez's action, and explained that there were "two experts who don't agree and one case which says that jurisdiction was not properly in Mexico . . . ." It appears that in both instances the trial court was referring to Hernandez's one expert, Pereznieto-Castro, and his explanation that the Mexican courts' dismissals of the *Garcia* and *Torres* cases was proof that Mexico did not have jurisdiction over an American corporation. Ford argues on appeal that Pereznieto-Castro's opinions should not have been the basis for the trial court's decision, and that other courts have sanctioned Pereznieto-Castro for asserting that Mexico is an unavailable forum in product liability cases involving accidents that occurred in Mexico, the same opinion he offered here.

The parties rely on numerous unpublished Mexican and United States federal district court cases for their respective positions, and Ford relies in part on Pereznieto-Castro's deposition testimony in a different case.[13] It is not clear what weight should be given to the Mexican court proceedings because it is difficult to surmise the reasons for the decisions, given the different procedures used by Mexican courts. None of the cited opinions is binding on this Court, and Pereznieto-Castro's deposition testimony was taken as evidence in a different case. But because the reasoning of some of the cases and Pereznieto-Castro's testimony on this issue may be instructive, some aspects of each will be discussed here.

The question of forum non conveniens, specifically whether Mexico is an available alternative forum, has

---

[13] According to the caption on the deposition transcript, Pereznieto-Castro was deposed in *In re Firestone/Ford Litigation* (*Villanueva*), 44th District Court, Dallas County, Texas, Docket No. 04-06717-B (Master File No. 01-01-410). The deposition was taken on October 19, 2006.

been addressed as part of an international, multi-jurisdictional federal product liability action.[14] Pereznieto-Castro has been involved in a number of the federal court cases,[15] including the *Garcia* and *Torres* cases noted in this Court's remand order, acting as a plaintiff's lawyer in Mexican proceedings, as a consultant, and as an expert witness in United States courts for the proposition that Mexico is not an available forum for a product liability case involving a foreign defendant.

In one of these actions, the United States Court of Appeals for the Seventh Circuit considered an appeal from a district court's dismissal of a case on the basis of forum non conveniens.[16] While the appeal in that case was pending, the plaintiffs filed an action in a district court in Morelos, Mexico, over which the Mexican district court determined it did not have jurisdiction. In considering the effect of the Mexican court's dismissal, the Seventh Circuit commented that "a suspicious haze surrounds the plaintiffs' actions in Mexico," noting that the plaintiffs did not inform either Bridgestone/Firestone or Ford of the Mexican proceed-

---

[14] *In re Bridgestone/Firestone, Inc*, 305 F Supp 2d 927, 932 (SD Ind, 2004) (*Bridgestone I*), vacated and remanded 420 F3d 702 (CA 7, 2005). In this case, the court held that Mexico is an available and adequate forum when the defendants agree to submit to Mexico's jurisdiction. Among the long thread of cases included in Master File No. IP IP00-9374-C-B/S, MDL No. 1373 is *Mendoza v Bridgestone/Firestone, Inc* (Case No. IP 04-5797-C-B/S), in which Pereznieto-Castro also participated.

[15] Decisions in most of these product liability cases are apparently unpublished. It is unclear how many of the cases directly involved Pereznieto-Castro, but he testified in a deposition in another case that he was involved in several cases that he identified by name (*Donato, Villanueva, Abarca, Torres Ojeda, Gonzales, Lopez,* and *Garcia*), and that the ideas behind the Mexican jurisdictional argument were his.

[16] *In re Bridgestone/Firestone, Inc*, 420 F3d 702 (CA 7, 2005) (*Bridgestone II*).

ings, or inform the court in Morelos of the proceedings in the United States.[17] Despite having "substantial misgivings" about the plaintiffs' actions, the Seventh Circuit concluded that it lacked sufficient information to determine whether the plaintiffs' actions were taken in good faith.[18] Therefore, the Seventh Circuit remanded the case to the federal district court for a determination whether the plaintiffs acted in good faith, stating that if the plaintiffs did not act in good faith by manipulating the dismissal of their case in Mexico, the district court would be free to dismiss the case again.[19]

On remand, the federal district court conducted an evidentiary hearing to explore the circumstances surrounding the decisions of the Morelos court. Relying on expert testimony presented at the evidentiary hearing, the federal district court found that "there are several types of jurisdictional competence" in Mexico, and that the form of competence at issue in the case before it was "territorial" competence, which is similar to personal jurisdiction in the United States.[20] Territorial competence requires that a defendant be domiciled within the Mexican district court's jurisdictional territory, but may be waived or extended when a defendant is outside the court's territorial competence but there is nonetheless a point of contact within the forum.[21] The federal district court concluded:

> The evidence establishes that in filing the case in Morelos, Mexico, the attorneys for Plaintiffs acted with the

---

[17] *Id.* at 706.

[18] *Id.*

[19] *Id.* at 706-707.

[20] *In re Bridgestone/Firestone, Inc*, 470 F Supp 2d 917, 920 (SD Ind, 2006) (*Bridgestone III*).

[21] *Id.* at 921.

clear purpose of having the case dismissed; and, in seeking that result, manipulated the process to insure that the dismissal would be based on a particular reason that was calculated to improve the chances of the dismissal being sustained on appeal. In addition, the Morelos court's conclusion that it lacked territorial competency over the defendants and therefore could not try the matter pending before it was obtained in bad faith and therefore is not subject to recognition by courts in the United States.[22]

The federal district court also commented on Pereznieto-Castro's role in the case, noting that he acted as both the plaintiffs' Mexican counsel and as their legal expert in the United States, which it characterized as "a double role in this attempted fraud on the court . . . ."[23] The federal district court also observed that Pereznieto-Castro had accepted a contingency fee interest in the plaintiffs' recovery and improperly submitted an affidavit to the federal court without disclosing that interest.[24]

Hernandez maintains that there are no cases in which any plaintiff was able to successfully sue Ford in Mexico. Ford disagrees and identifies a case where it was successfully sued in Mexico, *Gonzalez v Ford Motor Co*, and includes a number of apparent pleadings filed against Ford in a Mexican federal civil court in that

---

[22] *Id.* at 920.

[23] *Id.* at 928.

[24] *Id.* A month later, the federal district court sanctioned Pereznieto-Castro, whom it labeled "the apparent mastermind behind these frauds on the U.S. and Mexican courts . . . ." *In re Bridgestone/Firestone, Inc*, 470 F Supp 2d 931, 933 (SD Ind, 2006) (*Bridgestone IV*), vacated *De Manez v Bridgestone Firestone North American Tire, LLC*, 533 F3d 578 (CA 7, 2008). The Seventh Circuit Court of Appeals vacated the district court's sanction award because Pereznieto-Castro did not receive constitutionally adequate notice or an opportunity to be heard, and remanded the case to the district court for reconsideration.

case. Other federal courts have found that Mexico is an available jurisdiction for tort actions of Mexican citizens.[25]

Understanding any general rule in Mexican law is complicated by the fact that there are separate civil codes in all 31 Mexican states, as well as a federal code in Mexico, and that some of the foundational rules are different than in American courts. Despite those differences, however, Pereznieto-Castro acknowledged that under Mexican law, Mexican courts have jurisdiction of a tort action if both parties agree to submit to that jurisdiction, and that a foreign defendant could establish its submission under a variety of circumstances, including appearing in court or filing a response.

Ex parte proceedings are apparently legal in Mexico, and it appears that a plaintiff there can avoid jurisdiction by not following the Mexican courts' specific procedures. In his deposition in *Villanueva*, Pereznieto-Castro stated that a Mexican lawyer does not act in bad faith by filing an action there and urging dismissal, explaining that it is legal and appropriate for a lawyer to go to a judge, ex parte, and urge dismissal, and that a lack of notice or an attempt to have a case dismissed was not considered bad faith under Mexican law. That view was rejected, however, by the court in *Bridgestone III*, which concluded that Pereznieto-Castro acted in bad faith by deliberately seeking to obtain dismissal of a Mexican case in an attempt to show that Mexico was not an available forum for the action.[26]

Some of the Mexican cases suggest that Mexico's procedural rules are very different from those of Michi-

---

[25] See *Gonzales v Chrysler Corp*, 301 F3d 377, 380 n 3 (CA 5, 2002) (finding that Mexico was "an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts").

[26] *Bridgestone III*, *supra* at 920-921.

gan courts and that it may be difficult for Hernandez to bring a cause of action there. But it appears from the Mexican and the United States federal court cases, and even from Pereznieto-Castro's deposition testimony in *Villanueva*, that a plaintiff can successfully bring an action there by complying with applicable procedural rules, and one could reasonably presume that a lawyer who practices in Mexico would know those rules. As recognized in *Bridgestone III*, territorial jurisdiction in Mexico generally requires that a defendant be domiciled within the court's jurisdictional territory, but such jurisdiction may be waived or extended when a defendant is outside the court's territorial competence and there is a point of contact within the forum.[27] This case arises from an accident in Mexico, and Ford has agreed to stipulate that it will submit to jurisdiction in Mexico, pay any judgment, and comply with any rules of the foreign jurisdiction. Accordingly, Mexico appears to be an available forum to hear this case.

Although not a focus of the parties' arguments on appeal, this Court's prior remand order in *Hernandez I* directed the trial court to "consider *Juanes v Continental Tire North America, Inc*, 2005 WL 2347218 (SD Ill, 2005)[,] regarding the impact of the *Garcia* and *Torres* decisions on the issue at hand in this case." In *Juanes*, the United States District Court for the Southern District of Illinois dismissed the plaintiff's product liability action on the basis of forum non conveniens.[28] In doing so, it rejected the plaintiff's reliance on the *Garcia* and *Torres* cases, in which Pereznieto-Castro participated, as supporting the plaintiff's proposition that Mexico is not an available forum in a product liability case, explaining that the cases were dismissed

[27] *Id.* at 921.

[28] *Juanes, supra* at *6.

because of errors. In *Garcia*, the defendant "failed to meet the requirement of identifying, in a clear and precise way, the specific judge to whom they were submitting themselves."[29] Also, "[w]ith regard to the *Torres* case, defendants note that there is no indication in either of the trial and appellate court's opinions that either court was made aware that the defendants in the case had submitted themselves to the jurisdiction of the Mexican courts."[30] The *Garcia* court concluded that the Mexican courts would have jurisdiction over a United States corporation not domiciled in Mexico "as long as it is done properly."[31]

Furthermore, Pereznieto-Castro stated in his deposition that the Mexican cases on which he relied for his opinion that Mexico would not have jurisdiction over a foreign defendant, including *Garcia* and *Torres*, lack precedential value, even in Mexico. Pereznieto-Castro explained that it is rare for a case to have precedential value in Mexico.[32]

In sum, as other courts have concluded, the *Garcia* and *Torres* cases do not clearly establish that Mexico would not be an available forum to hear this case, especially where Ford is willing to stipulate jurisdiction in Mexico. Further, Hernandez's remaining arguments against finding Mexico as an available forum are based principally on the opinions of Pereznieto-Castro, which have been criticized and rejected by other courts, and which appear to be based more on his own personal beliefs of what the law

---

[29] *Id.* at *2.

[30] *Id.*

[31] *Id.*

[32] Pereznieto-Castro claimed, however, that he would soon have written authority to support his opinion, because he had written a new version of his textbook on conflict of law, and had recommended that Mexican courts not take jurisdiction over foreign defendants.

ought to be than what it actually is. As such, Pereznieto-Castro's opinions do not provide a reliable basis for concluding that Mexico is not an available forum to hear this case. Conversely, it appears that Mexico is an available forum if Ford agrees to submit to jurisdiction in Mexico, which it has indicated it is willing to do.

For these reasons, the trial court abused its discretion by deciding that Mexico was not an available forum for this action by a Mexican citizen regarding injuries sustained in an accident in Mexico.

### III. THE *CRAY* FACTORS AND DISMISSAL ON THE BASIS OF FORUM NON CONVENIENS

#### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision whether to dismiss a case on the basis of forum non conveniens.[33] A trial court's conclusion after application of the *Cray* factors is an abuse of discretion when it is "outside the principled range of outcomes . . . ."[34]

#### B. THE *CRAY* FACTORS

This Court in *Hernandez I* instructed the trial court to consider on remand all the factors set out in *Cray v Gen Motors Corp*,[35] in light of the Michigan Supreme Court's decision in *Radeljak*.[36]

In *Cray*, the Michigan Supreme Court determined that the doctrine of forum non conveniens should apply in Michigan and explained that the decision whether to accept jurisdiction required "[a] balancing out and weigh-

---

[33] *Radeljak, supra* at 603.

[34] *Id.* at 606 (quotation marks and citations omitted).

[35] *Cray, supra* at 396.

[36] *Radeljak, supra* at 605-606.

ing" of several factors.[37] The Supreme Court explained that "courts are charged to consider the plaintiff's choice of forum and to weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state."[38]

In *Radeljak*, the Michigan Supreme Court reconsidered and explained the application of the doctrine. As in this case, *Radeljak* involved a situation in which the plaintiff's decedent was killed in a car accident in a foreign country involving an automobile manufactured in the United States, except that the foreign jurisdiction in *Radeljak* was Croatia.[39] The Michigan Supreme Court approved the use of the *Cray* factors, held that dismissal may be warranted if a plaintiff chooses a particular forum solely to take advantage of the more favorable law rather than because it was convenient, determined that a foreign plaintiff's choice of forum should be given less deference than would be accorded to a domestic plaintiff, and concluded that a court had discretion to refuse to hear a case even if the Michigan court was not "seriously inconvenient."[40]

Here, the trial court considered each of the *Cray* factors, but did not consider the effect of *Radeljak*. We will address each of the *Cray* factors along with the trial court's findings.

### 1. THE PRIVATE INTEREST OF THE LITIGANT

#### (a) AVAILABILITY OF COMPULSORY PROCESS FOR ATTENDANCE OF UNWILLING WITNESSES AND THE COST OF OBTAINING ATTENDANCE OF WILLING WITNESSES

The trial court determined that witnesses are "sub-

---

[37] *Cray, supra* at 395.

[38] *Id.* at 396.

[39] *Radeljak, supra* at 602-603.

[40] *Id.* at 605-606, 612-618.

ject to compulsory process for depositions under the Hague Convention," regardless of the trial location, and the trial court was "not persuaded that this factor favors dismissal." The trial court correctly recognized that Michigan courts do not have the power of compulsory process over Mexican witnesses and that defendant would have to use "letters rogatory" to obtain testimony from witnesses unwilling to travel.[41] In fact, it appears that both parties would normally have to use letters rogatory, although Ford stipulated in this case that it would make its witnesses available voluntarily. "The use of letters rogatory is acknowledged to be a very time consuming and cumbersome process."[42] Each party, if trial were in the other forum, would incur the expense for the attendance of willing witnesses. The trial court found that this factor did not favor dismissal, and we agree that it would normally not favor either party. Because of Ford's stipulation, however, that it would voluntarily provide its witnesses if the case were heard in Mexico, this factor slightly favors a Mexican forum.

(b) EASE OF ACCESS TO SOURCES OF PROOF

The trial court found that although the documents and proofs regarding the accident are located in Mexico, they are "likely to be small in number" compared to the technical documents in the United States regarding product design. Because both sets of documents would have to be translated, and the Mexican documents appear to be fewer, the trial court found that "[t]his factor disfavors dismissal."

[41] See the United States Department of State website: <http://travel.state.gov/law/info/ judicial/judicial_683.html> (accessed August 14, 2008).

[42] *Radeljak, supra* at 607.

The accident, the witnesses to the accident, the Explorer, and any repair records for the Explorer, are all located in Mexico. Although Hernandez suggests that it is incomprehensible that Ford would consider Mexico more "convenient" than Michigan, it would be easier to obtain sources of proof regarding the accident and this specific vehicle in Mexico. And while the documentary evidence relating to design and manufacture is located in the United States, Ford has stipulated that it will make that evidence available. Michigan law authorizes subpoenas for document production when an action is pending in another country and, as was also true in *Radeljak*, Hernandez shows no similar provision under Mexican law.[43] In addition, as the Seventh Circuit explained in *Bridgestone II*, the "U.S.-specific information" in this multi-jurisdictional litigation has already been established, and only the accident-specific evidence in individual cases needed to be collected.[44] Therefore, it appears that the parties would have easier access to those proofs in Mexico, where the accident occurred, and that the trial court abused its discretion by ruling that this factor disfavored dismissal. This factor favors the Mexican forum.

#### (c) DISTANCE FROM THE SITUS OF THE ACCIDENT OR INCIDENT THAT GAVE RISE TO THE LITIGATION

The trial court noted in passing that "[t]he proofs regarding the accident, other than live testimony of any witnesses will involve accident reconstruction techniques and are not affected by the distance from the cite [sic] of the incident." Michigan is far from Mexico, where the accident occurred, but is the alleged site of the decisions regarding the Explorer's design. The

---

[43] MCR 2.305; *Radeljak, supra* at 608.

[44] *Bridgestone II, supra* at 705.

parties have not established that either forum is favored under this subsection.

### (d) ENFORCEABILITY OF ANY JUDGMENT OBTAINED

The trial court found that "[a]ny judgment obtained in Michigan is enforceable against the defendant. The defendant asserts that it will voluntarily pay any Mexican judgment. Voluntary payment is an unenforceable gratuity and this factor favors keeping the case in the United States." Ford stipulated that it would pay any nonappealable foreign judgment, and Hernandez does not explain why she could not obtain an enforceable court order of Ford's stipulations. Moreover, in its original ruling, the trial court found that "[t]he judgments are enforceable regardless of in which country." Neither the trial court nor Hernandez explains what has changed in this regard. This factor is neutral.

### (e) POSSIBLE HARASSMENT OF EITHER PARTY

The trial court did not address this factor on remand. However, in its initial opinion, it stated, "I don't see any harassment that's here." It appears that this factor is neutral.

### (f) OTHER PRACTICAL PROBLEMS THAT CONTRIBUTE TO THE EASE, EXPENSE, AND EXPEDITION OF THE TRIAL

As a practical problem contributing to its decision, the trial court stated that the plaintiff's choice of counsel was also a factor to consider: "The Plaintiff has chosen Counsel from Oklahoma. Unfortunately, she did not pick one of our superior Michigan lawyers. However, her choice of Counsel will be [eviscerated] if the case is moved to Mexico." The trial court gave no explanation why a Michigan forum is favored because of a foreign plaintiff's choice of an Oklahoma attorney to

pursue a tort action that arose from the death of a Mexican citizen in an accident in Mexico. To the extent that the trial court was weighing Hernandez's choice of forum under this factor, the Michigan Supreme Court stated in *Radeljak* that a trial court "should afford a foreign plaintiff's choice of forum less deference than it would accord a domestic plaintiff."[45]

The trial court also considered the problems with "language issues," explaining that "both jurisdictions will be faced with letters rogatory and translation issues. It is no easier for our neighbors in Mexico to translate English to Spanish than it is for us to translate Spanish to English. The recent certifications of translator services in Michigan is not a unique issue in a global economy and Michigan is competent to manage it." We do not believe that the additional considerations, choice of counsel, and language, favor either forum.

### (g) POSSIBILITY OF VIEWING THE PREMISES

The trial court explained that "[t]his factor favors dismissal. However, the frequency of actual visits to an accident site are rare, at least in the United States. It is much more likely that a 'view' will be done by simulation or digital recording." The trier of fact in a Michigan court would not be able to view the scene of the accident. Regardless of what the parties decide to do in a trial, there remains the possibility that the accident site could be viewed in a Mexican forum, and there is no chance of a visit to the site if the trial is held in Michigan. This factor favors the Mexican forum.

On balance, four of the factors relating to the private interest of the litigant are neutral, and three factors favor a Mexican forum. Neither of the trial court's

---

[45] *Radeljak, supra* at 618.

additional considerations changed that balance, so the "private interest" factors favor dismissal in the Michigan forum.

## 2. MATTERS OF PUBLIC INTEREST

### (a) ADMINISTRATIVE DIFFICULTIES THAT MAY ARISE IN AN AREA THAT MAY NOT BE PRESENT IN THE AREA OF ORIGIN

The trial court considered the "inability to interplead other parties" and rejected Ford's claim that it could not interplead unidentified Mexican parties in a Michigan forum. The trial court concluded that "[t]he mere assertion that some other unknown, unnamed, or undescribed person might need to interplead does not create for this Court a basis for declining jurisdiction. This factor does not favor dismissal. Moreover, MCL 600.2957 allows consideration for the fault of all parties and non-parties regardless of whether they are present in the case in any case in Michigan.[46] Therefore, consideration of fault of non-parties is not obviated by their inability to be interpled."

In *Radeljak*, the Michigan Supreme Court explained that the American defendant there would not be able to implead Croatian people or entities that might be responsible for the plaintiff's injuries, and that the inability to implead was a factor that favored the Croatian forum.[47] The same is true here, where Ford could not implead, for instance, the Explorer's driver or mechanic, if the case were tried in Michigan. It is not fatal that Ford has not identified a specific individual. " '[T]he problems posed by the inability to implead potential third-party defendants' is 'sufficient to sup-

---

[46] MCL 600.2957 provides that each person's liability should be allocated and that a percentage of fault can be assessed against a nonparty.

[47] *Radeljak, supra* at 609.

port dismissal on grounds of *forum non conveniens*.' "[48] This factor favors a Mexican forum, and the trial court abused its discretion in stating otherwise.

#### (b) CONSIDERATION OF THE STATE LAW THAT MUST GOVERN THE CASE

The trial court did not consider this issue because it had not been briefed, stating:

> This Court is aware there is a conflict as to which law applies to this case.
>
> The defendant argues that Mexican products law is applicable and will cause incredible difficulty in its application. They ask the Court to consider *Hall v General Motors*, 229 Mich App, 580, at 55 [sic], 583 [sic] Northwest 2d, 866, a 1998 case.[49]
>
> The plaintiff asserts that Michigan law applies and asks the Court to look instead at *Olmstead v Anderson*, 428 Michigan [1].[50]
>
> Both cases apply an interesting analysis. Without rendering what this Court believes is a premature decision on conflict of laws, the Court would note that while Mexico has an interest in its citizens' safety, Michigan has a deep and abiding interest in the mass production of automobiles and the protection of the stream of commerce arising from those automobiles.
>
> Until and unless the issues of conflict of laws are fully briefed and argued, this Court cannot and will not determine that Mexico's interests are superior to Michigan.

---

[48] *Id.*, quoting *Piper Aircraft Co v Reyno*, 454 US 235, 259; 102 S Ct 252; 70 L Ed 2d 419 (1981).

[49] In *Hall v Gen Motors Corp*, 229 Mich App 580, 585; 582 NW2d 866 (1998), this Court applied the "interest analysis" to choice of law in a case involving an accident in North Carolina involving a plaintiff who later moved to Michigan.

[50] *Olmstead v Anderson*, 428 Mich 1, 3; 400 NW2d 292 (1987), involved an automobile accident in Wisconsin where Minnesota citizens were struck and killed by a Michigan resident.

In *Radeljak*, the Michigan Supreme Court explained that "courts look to see which jurisdiction has a greater interest in the case" in order to determine whose laws apply.[51] Here, Mexico has an interest because a Mexican citizen was killed in an accident on Mexican soil, in a vehicle purchased in Mexico. As the trial court suggested, Michigan citizens do have an interest in Ford's business because it affects this state's economy, but Michigan citizens were not directly involved in the fatal accident. While both forums have some interest in this proceeding, Mexico's interest in having this case, involving redress to a Mexican citizen, "decided by its own rules and procedures" appears greater.[52] Although the trial court declined to make a finding regarding choice of law, we believe it is more likely that Mexican law would apply, and that this factor favors Mexico as a forum.

(c) PEOPLE WHO ARE CONCERNED WITH THE PROCEEDING

In *Radeljak*, the Michigan Supreme Court balanced Croatia's "local interest" in a "localized controversy" involving the fatal accident there and the interest of Michigan citizens in "products-liability lawsuits filed against Michigan manufacturers."[53] In *Radeljak*, the Michigan Supreme Court concluded that, for the same reasons it discussed with regard to factor 2(b), Croatia's interest was greater than Michigan's interest.[54]

On appeal, Hernandez suggests that her "best opportunity for full compensation and justice rests in Michigan," and that Mexico's "primary interest in this case is

---

[51] *Radeljak, supra* at 610; see also *Olmstead, supra* at 5-6.

[52] *Radeljak, supra* at 611.

[53] *Id.*

[54] *Id.*

having its citizens fully compensated for their losses."
These arguments work against the choice of Michigan
as a forum because " 'dismissal may be warranted
where a plaintiff chooses a particular forum, not be-
cause it is convenient, but solely in order to . . . take
advantage of favorable law.' "[55] As the Michigan Su-
preme Court explained in *Radeljak*, when a plaintiff
chooses a forum in another country thousands of miles
away from the accident, "there is no basis to presume
that this faraway forum will be more convenient to the
parties and to the court, and, thus, there is no basis to
defer to the plaintiff's choice of forum."[56] The trial court
did not specifically address this factor, but given that a
Mexican citizen was killed in an accident in Mexico and
that his Mexican widow is bringing this action, we
conclude that this factor favors the Mexican forum.

### 3. REASONABLE PROMPTNESS IN RAISING THE PLEA OF FORUM NON CONVENIENS

The trial court did not address this factor, and
Hernandez does not assert that Ford's claim was un-
timely. Therefore, this factor is neutral.

### 4. CONCLUSION

All three of the "public interest" factors favor a
Mexican forum, and the promptness factor is neutral.
None of the factors, under either the private or the
public interest considerations, favors a Michigan forum.
Therefore, we conclude that a balancing and weighing
of the *Cray* factors leads to the conclusion that Mexico
is the more appropriate forum. Because Mexico is an
available forum and the *Cray* factors favor Mexico, the

---

[55] *Id.* at 613, quoting *Piper, supra* at 249 n 15.

[56] *Radeljak, supra* at 613-614.

trial court's decision was not within the "principled range of outcomes," and the trial court therefore abused its discretion in denying Ford's motion to dismiss on the basis of forum non conveniens.[57]

We reverse and remand for entry of an order dismissing Hernandez's cause of action. We do not retain jurisdiction.

---

[57] *Radeljak, supra* at 603.