NASH v SALTER

Docket No. 282311. Submitted April 1, 2008, at Detroit. Decided August 7, 2008, at 9:05 a.m.

Rochelle L. Nash, Jeffrey S. Salter, and their child (who was born on August 3, 2006) lived in Texas with Salter's parents, Steve and Karen Salter from approximately August 5, 2006, to March 20, 2007. On March 21, 2007, Jeffrey Salter filed a petition in the 356th Judicial District Court of Texas asking the court to name him as the sole managing conservator of the child. On May 20, 2007, Jeffrey Salter and the child moved to Michigan to join Nash, who had moved to Michigan on March 20, 2007. On July 23, 2007, Steve and Karen Salter filed in the Texas court a petition in intervention, claiming that appointing Nash and Jeffrey Salter as joint managing conservators for the child would not be in the child's best interest and that Steve and Karen Salter should be appointed as joint managing conservators with the exclusive right to specify the child's primary residence. On August 22, 2007, Nash and Jeffrey Salter filed a complaint against Steve and Karen Salter in the Wayne Circuit Court, Family Division, seeking a determination of custody. On October 1, 2007, the Texas court entered an order awarding Steve and Karen Salter physical custody of the child. The Wayne Circuit Court, Amy P. Hathaway, J., dismissed Nash and Jeffrey Salter's action in that court, ruling that it lacked subject-matter jurisdiction. Nash and Jeffrey Salter appealed.

The Court of Appeals *held*:

1. The circuit court could not take jurisdiction pursuant to § 201(a)(1) of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1201(1)(a), to make an initial child-custody determination because Michigan was not the child's home state, having not lived in Michigan for at least six consecutive months immediately before the commencement of the child-custody proceeding in Michigan.

2. The circuit court could not take jurisdiction under § 201(a)(2) of the UCCJEA, MCL 722.1201(1)(b). Jurisdiction cannot be premised on that provision unless there is no home state or a court of the home state of the child has declined to exercise jurisdiction. Neither situation obtained in this case.

3. The circuit court properly ruled that because the Texas court had jurisdiction substantially in conformity with the UCCJEA, the circuit court had to dismiss Nash and Jeffrey Salter's complaint. Section 206(a) of the UCCJEA. MCL 722.1206(1), provides that a court may not exercise its jurisdiction under Article 2 of the UCCJEA if, at the time of the commencement of the proceeding, a child-custody proceeding has been commenced in a court of another state having jurisdiction substantially in conformity with the UCCJEA. In this case, a child-custody proceeding had been commenced in the Texas court at the time the Michigan proceeding was commenced. Texas was the child's home state and the Texas court had jurisdiction under § 201 of the UCCJEA.

4. The requirements of §§ 106 and 205(1) of the UCCJEA—which concern child-custody determinations, notice, and an opportunity to be heard—do not apply to a temporary restraining order issued by the Texas court because the order was not a child-custody determination.

5. Nash and Jeffrey Salter's general appearance in the form of their response to Steve and Karen Salter's petition in intervention constituted a waiver of the issue of personal jurisdiction and any due-process objection based on inadequate service of process.

6. None of the UCCJEA provisions cited by Nash and Jeffrey Salter indicates that the inadequacy of the pleadings under § 209 of the UCCJEA deprived the Texas court of subject-matter jurisdiction.

7. Nash and Jeffrey Salter provided no supporting legal authority for their claim that because Jeffrey Salter had abandoned the petition he filed in Texas, the Texas child-custody proceeding should be considered as having been initiated on July 23, 2007, when Steve and Karen Salter filed their petition in intervention, so as to allow the circuit court to take jurisdiction.

8. Nash and Jeffrey Salter have failed to show that Steve and Karen Salter did not have standing to intervene in the Texas court proceeding.

9. The Court of Appeals is unable to consider Nash and Jeffrey Salter's claim that the Texas court denied them their due-process rights in light of their failure to provide the Court of Appeals with a transcript of the proceedings in the Texas court.

10. Given Nash and Jeffrey Salter's admission that they received notice of the September 24, 2007, hearing by mail on September 7, 2007, there are no grounds for concluding that they did not receive proper notice under Michigan law. UCCJEA § 108(a); MCR 2.119(C)(1)(a); MCR 2.107(C).

Affirmed.

1. PARENT AND CHILD — UNIFORM CHILD-CUSTODY JURISDICTION AND ENFORCE-
   MENT ACT — COURTS — JURISDICTION — APPEAL.

   Whether to exercise jurisdiction under the Uniform Child-Custody
   Jurisdiction and Enforcement Act is within a trial court's discre-
   tion and its determination will not be reversed on appeal absent an
   abuse of that discretion (MCL 722.1101 *et seq.*).

2. PARENT AND CHILD — UNIFORM CHILD-CUSTODY JURISDICTION AND ENFORCE-
   MENT ACT — COURTS — JURISDICTION — SIGNIFICANT CONNECTION WITH
   STATE OTHER THAN MERE PRESENCE.

   A court does not have jurisdiction to make an initial child-custody
   determination pursuant to the Uniform Child-Custody Jurisdic-
   tion and Enforcement Act provision regarding significant connec-
   tion with the state other than mere presence unless the court first
   establishes that there is no home state for the child or that a court
   of the home state of the child has declined to exercise jurisdiction
   (MCL 722.1201[1][b]).

*Roger L. Premo* and *Phillip D. Hickey* for the plain-
tiffs.

Steve Salter and Karen Salter, *in propriis personis.*

Before: ZAHRA, P.J., and WHITBECK and BECKERING, JJ.

ZAHRA, P.J. Plaintiffs, Rochelle Nash and Jeffrey
Salter, appeal as of right the order of the circuit court
dismissing their complaint for determination of cus-
tody. On appeal, they argue that the circuit court
erred in finding that it lacked subject-matter juris-
diction under the Uniform Child-Custody Jurisdic-
tion and Enforcement Act (UCCJEA), MCL 722.1201,
to make a child-custody determination with respect
to their daughter. Plaintiffs had asked the circuit
court to take jurisdiction of this custody dispute and
deny enforcement of a Texas custody order that
plaintiffs contend was rendered without jurisdiction.
We conclude that plaintiffs cannot establish home-

state jurisdiction under the UCCJEA. We also con-
clude that the circuit court properly determined that
the Texas court established jurisdiction substantially
in conformity with the UCCJEA. Further, we con-
clude that defendants, Steve Salter and Karen Salter,
properly intervened in the custody action in Texas
instituted by plaintiff Jeffrey Salter. We affirm.

## I. BASIC FACTS AND PROCEEDINGS

This case arises from a custody dispute between plain-
tiffs, the parents of the child, and defendants, who are
Jeffrey Salter's parents. Plaintiffs and the child, who was
born August 3, 2006, lived with defendants in Texas from
approximately August 5, 2006, until March 20, 2007. On
March 20, 2007, Rochelle Nash moved to Michigan, and,
the next day, Jeffrey Salter filed a petition in the 356th
Judicial District Court of Texas ("the Texas court") asking
that court to enter an order making him "sole managing
conservator" of the child. On or about May 20, 2007,
Jeffrey Salter moved to Michigan with the child. He
apparently did not further pursue the petition for custody.
The child resided in Michigan with both plaintiffs com-
mencing on or about May 21, 2007. On July 23, 2007,
defendants filed a "Petition in Intervention of Grandpar-
ents in Suit Affecting the Parent-Child Relationship" in
the Texas court. They claimed that "appointment of
[plaintiffs] as joint managing conservators would not be in
the best interest of the child because the appointment
would significantly impair the child's physical health or
emotional development," and asked the Texas court to
appoint them joint managing conservators with the "ex-
clusive right to designate the primary residence of the
child."

Plaintiffs filed their complaint for determination of
jurisdiction and custody in the Wayne Circuit Court

("the Michigan court") on August 22, 2007. They argued that the Texas court did not have jurisdiction under the UCCJEA and that the Michigan court had jurisdiction. Accordingly, plaintiffs asked the Michigan court to award them custody of the child.

On October 1, 2007, the Texas court entered an order appointing defendants temporary sole managing conservators and plaintiffs temporary possessory conservators of the child. The Texas court's order provided that defendants had the right to physical custody of the child and that plaintiffs were to have possession of the child at times mutually agreed upon in advance by the parties. The order further provided that defendants "shall take immediate possession of the child at [plaintiffs'] residence" in Michigan. Defendants successfully moved to dismiss plaintiffs' complaint in the Michigan court. An order dismissing the Michigan action for lack of subject-matter jurisdiction was entered on November 7, 2007. The child moved back to Texas and has resided with defendants since December 3, 2007. Plaintiffs returned to Texas to be near the child.

## II. STANDARD OF REVIEW

"Whether a trial court has subject-matter jurisdiction presents a question of law that this Court reviews de novo." *Atchison v Atchison*, 256 Mich App 531, 534; 664 NW2d 249 (2003). However, "the determination whether to exercise jurisdiction under the UCCJEA [is] within the discretion of the trial court, and would not be reversed absent an abuse of that discretion." *Young v Punturo (On Reconsideration)*, 270 Mich App 553, 560; 718 NW2d 366 (2006). The jurisdictional determination in this case involves the UCCJEA, codified in Michigan as MCL 722.1101 *et seq.* We review issues of statutory construction de novo as questions of law. *Atchison,*

*supra* at 534-535. We also review constitutional questions de novo. *Blackburne & Brown Mortgage Co v Ziomek*, 264 Mich App 615, 620; 692 NW2d 388 (2004).

### III. ANALYSIS

#### A. JURISDICTION IN MICHIGAN

Plaintiffs first argue on appeal that the Michigan court erred in determining that it lacked subject-matter jurisdiction for the sole reason that Michigan did not have home-state jurisdiction under the UCCJEA, MCL 722.1201. Although plaintiffs are correct that this is not the only basis for jurisdiction, we nevertheless conclude that the Michigan court properly dismissed plaintiffs' complaint.

The UCCJEA became effective in Michigan on April 1, 2002. Section 201, codified in Michigan as MCL 722.1201, sets forth the basic jurisdictional requirement for making an initial custody determination:

(1) Except as otherwise provided in section 204,[1] a court of this state has jurisdiction to make an initial child-custody determination only in the following situations:

(a) This state is the home state[2] of the child on the date of the commencement of the proceeding, or was the home

---

[1] Section 204, MCL 722.1204, provides for temporary emergency jurisdiction in a court of this state "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." This provision is not relevant here because plaintiffs made no such allegation in their complaint.

[2] " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding." MCL 722.1102(g).

state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(b) A court of another state does not have jurisdiction under subdivision (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 207 or 208, and the court finds both of the following:

(*i*) The child and the child's parents, or the child and at least 1 parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(*ii*) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(c) All courts having jurisdiction under subdivision (a) or (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under section 207 or 208.

(d) No court of another state would have jurisdiction under subdivision (a), (b), or (c).

(2) Subsection (1) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(3) Physical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child-custody determination.

As plaintiffs concede, the Michigan court correctly determined that Michigan was not the child's home state on the date of the commencement of the Michigan proceeding, nor had Michigan been the child's home state within six months before the commencement of the proceeding. The Michigan proceeding was commenced on August 22, 2007, when plaintiffs filed a complaint in the Michigan court. The child lived in

Texas from the time she was born on August 3, 2006, until May 20, 2007, when she moved to Michigan with her father. Accordingly, Texas was the child's home state. MCL 722.1201(1)(a). When the Michigan proceeding was commenced, the child had only lived in Michigan for approximately three months and had not lived in Michigan previously.

Plaintiffs nonetheless argue that the Michigan court erred by ruling that Michigan lacked subject-matter jurisdiction to make a custody determination solely because the Michigan court did not have home-state jurisdiction. Home-state jurisdiction under MCL 722.1201(1)(a) is not the only jurisdictional basis for making an initial custody determination. Plaintiffs argue that MCL 722.1201(1)(b) provides an alternative ground to support a finding of jurisdiction in Michigan. Plaintiffs refer to this jurisdictional ground as "significant connection" jurisdiction. Plaintiffs' argument is without legal merit.

Jurisdiction cannot be premised on the family's significant connection to Michigan unless the court first establishes: (1) there is no "home state" as that term is used in MCL 722.1201(1)(a), or (2) "a court of the home state of the child has declined to exercise jurisdiction . . . ." MCL 722.1201(1)(b). Neither of the above circumstances exists in the present case. Texas is the child's home state and the Texas court did not decline to exercise jurisdiction. Thus, Michigan does not have significant connection jurisdiction over this matter.

### B. DISMISSAL AFTER CONCLUDING TEXAS HAD JURISDICTION IN SUBSTANTIAL CONFORMITY WITH THE UCCJEA

Plaintiffs' second argument on appeal is that the Michigan court erred in determining that, because the Texas court had jurisdiction substantially in conformity

with the UCCJEA, it was required to dismiss plaintiffs' complaint. We again find no merit to plaintiffs' argument.

MCL 722.1206, which governs simultaneous proceedings, provides in pertinent part:

> (1) Except as otherwise provided in section 204, a court of this state may not exercise its jurisdiction under this article if, at the time of the commencement[3] of the proceeding, a child-custody proceeding has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under section 207.

> (2) Except as otherwise provided in section 204, before hearing a child-custody proceeding, a court of this state shall examine the court documents and other information supplied by the parties as required by section 209. If the court determines that, at the time of the commencement of the proceeding, a child-custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this act, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this act does not determine that a court of this state is a more appropriate forum, the court of this state shall dismiss the child-custody proceeding.

Thus, because a child-custody proceeding had been commenced in Texas at the time of the commencement of the Michigan proceeding on August 22, 2007, the issue is whether Texas had "jurisdiction substantially in conformity with this act." MCL 722.1206(1). When Jeffrey Salter filed his petition in the Texas court on

---

[3] " 'Commencement' means the filing of the first pleading in a proceeding." MCL 722.1102(e).

March 21, 2007, the child had lived with one or both plaintiffs in defendants' home since she was born on August 3, 2006—more than six months. Accordingly, Texas was the child's home state on the date of the commencement of the proceeding and therefore had subject-matter jurisdiction under section 201 of the UCCJEA.[4]

Plaintiffs also argue that the Michigan court was required to find that the temporary restraining order of the Texas court[5] violated §§ 106 and 205(1) of the UCCJEA. Section 106[6] provides:

> A child-custody determination made by a court of this State that had jurisdiction under this [Act] binds all persons who have been served in accordance with the laws of this State or notified in accordance with Section 108 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified. [Brackets in original.]

Section 205(a)[7] provides that, "[b]efore a child-custody determination is made under this [Act], notice and an opportunity to be heard in accordance with the standards of Section 108 must be given to each person entitled to notice under the law of this State . . . ." Subsection b makes clear that "[t]his [Act] does not govern the enforceability of a child-custody determination made without notice or an opportunity to be

---

[4] Tex Fam Code Ann § 152.201(a) is the similar Texas provision.

[5] The Texas court actually entered two temporary restraining orders, one on March 21, 2007, following Jeffrey Salter's filing of his petition, and one on July 25, 2007, following defendants' filing of their motion to intervene. Plaintiffs do not specify whether they are referring here to one or both temporary restraining orders.

[6] MCL 722.1106 is the similar Michigan provision.

[7] MCL 722.1205(1) is the similar Michigan provision.

heard." Under § 108(a), "[n]otice required for the exercise of jurisdiction when a person is outside this State may be given in a manner prescribed by the law of this State for service of process or by the law of the State in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective." Section 108 "authorizes notice and proof of service to be made by any method allowed by either the State which issues the notice or the State where the notice is received." Comment, UCCJEA § 108.

The Texas court issued temporary restraining orders on March 21, 2007, and July 25, 2007, but these were not "child-custody determinations." " 'Child-custody determination' means a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child." UCCJEA § 102(3); see also MCL 722.1102(c). Although the definition of "child-custody determination" under this provision does include a temporary *custody* order, the temporary restraining orders entered by the Texas court on March 21, 2007, and July 25, 2007, "did not provid[e] for legal custody, physical custody, or parenting time." They merely ordered the parties to appear at later hearings to determine whether provisions for temporary custody should be made while the custody case was pending.

Also, it appears that plaintiffs waived the issue of personal jurisdiction, and, accordingly, any due-process objection based on inadequate service of process. Service of process is an issue of personal jurisdiction, objections to which may be waived by filing a general appearance. See *Seals v Upper Trinity Regional Water Dist*, 145 SW3d 291, 296 (Tex App, 2004) ("Without notice via the required service of citation or a waiver

thereof, nothing short of a general appearance will confer personal jurisdiction upon the trial court."). "A general appearance is normally in the form of an answer to the claims made in the suit." *Id.* See also Rule 121 of the Texas Rules of Civil Procedure ("An answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him."). Although the parties stipulated that Rochelle Nash was never served properly in connection with Jeffrey Salter's original petition in the Texas court, defendants allegedly personally served plaintiffs when they filed their petition in intervention on July 23, 2007. They claimed that plaintiffs were served, on July 30, 2007, with the petition, the temporary orders, and the order to appear. Defendants also claim that plaintiffs filed a response to defendants' petition in intervention, which they have attached to their brief on appeal as Exhibit 2. This document bears a filing date of August 21, 2007. This is not part of the lower-court file; however, plaintiffs do not contest its authenticity. Thus, by their general appearance in the form of their response to defendants' petition in intervention, plaintiffs waived the issue of personal jurisdiction, and, accordingly, any due-process objection based on inadequate service of process.

Plaintiffs also argue that defendants' petition in intervention failed to meet several pleading requirements of § 209 of the UCCJEA, and, accordingly, that "the Texas court failed to conduct the proceeding in substantial conformity with the UCCJEA." Section 209(a), as codified in Texas, provides, in part:

> [E]ach party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of

the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

(1) has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child-custody determination, if any;

(2) knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; and

(3) knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

Jeffrey Salter's initial petition in the Texas court contains only the child's county of residence. Further, the petition states only that "[n]o court has continuing jurisdiction of this suit or of the child [sic] the subject of this suit" and that "[t]here are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child [sic] the subject of this suit." The record does not reflect that there is an affidavit included with this petition, and it is not clear whether an affidavit was filed with the petition in the Texas court. Defendants' petition in intervention contains exactly the same information, and, again, it is not clear whether an affidavit was also filed.

Nevertheless, the Texas court was not *required*, under § 209 of the UCCJEA, to take any action as a result of the deficiency of the parties' pleadings. Under subsection b, a court "may" stay the proceedings

if the information set forth in subsection a is not
provided. There is nothing in the language of the
provisions of the UCCJEA cited by plaintiffs to indicate
that the inadequacy of the pleadings under § 209 de-
prived the Texas court of subject-matter jurisdiction,
and that the Michigan court therefore erred in declining
to exercise jurisdiction on this basis.

### C. DEFENDANTS' INTERVENTION IN THE TEXAS COURT PROCEEDINGS

Plaintiffs' third argument on appeal is that defen-
dants could not validly intervene in the custody action
commenced by Jeffrey Salter and that the date of the
commencement of the Texas proceeding could not,
therefore, be considered March 21, 2007. We disagree.

Jeffrey Salter filed his petition in the Texas court on
March 21, 2007. Thus, as already discussed, Texas was
the child's home state on the date of the commence-
ment of the proceeding, UCCJEA § 201, because the
child had resided in Texas for at least six months
immediately before the commencement of that proceed-
ing. UCCJEA § 102(7). This means that Texas had
jurisdiction to make an initial child-custody determina-
tion. Plaintiffs argue, however, that July 23, 2007, the
date defendants filed their petition in intervention,
should be considered the date of the commencement of
the proceeding. They base this argument on the claim
that process was never served in connection with Jef-
frey Salter's petition (the parties stipulated that Roch-
elle Nash was not properly served), and "because the
matter had become completely moot as of May 21,
2007[,] when Jeffrey Salter and the child arrived at
their new residence in Michigan," and Jeffrey Salter
"abandoned" his petition. They therefore argue that
defendants' petition in intervention should be treated

as an original filing, and the relevant date for determining whether Texas had jurisdiction was July 23, 2007. Because plaintiffs cite no legal authority that compels the conclusion that the Michigan court was required or permitted to disregard the date of the initial filing, they have abandoned this issue. See *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant may not . . . give issues cursory treatment with little or no citation of supporting authority. . . . [F]ailure to properly address the merits of [the appellant's] assertion of error constitutes abandonment of the issue.").

Plaintiffs essentially ask this Court to determine that the Texas court should have dismissed Jeffrey Salter's petition as moot, or otherwise disregarded it for purposes of determining the date of the commencement of the Texas proceeding. However, this Court's role in this appeal is not to consider the propriety of the Texas proceedings under Texas law. It is simply to determine whether the Michigan court properly declined to exercise jurisdiction to determine the custody issue between the parties. The only relevance of plaintiffs' arguments in connection with this issue to the questions before the Michigan court below and this Court on appeal is as they pertain to § 206 of the UCCJEA: the Michigan court was not permitted to exercise its jurisdiction if, at the time of the commencement of the proceeding, a child-custody proceeding had been commenced in a court of another state having jurisdiction substantially in conformity with this act. For purposes of this inquiry, the Texas proceeding was commenced when Jeffrey Salter filed his petition on March 21, 2007. " 'Commencement' means the filing of the first pleading in a proceeding.' " UCCJEA § 102(5). Thus, a proceeding had been commenced within the meaning of MCL 722.1206(1) at the time plaintiffs filed their complaint

in the Michigan court, and, on March 21, 2007, Texas was the child's home state and Texas therefore had jurisdiction to make an initial custody determination under § 201 of the UCCJEA. Accordingly, the Michigan court was not permitted to exercise jurisdiction.

### D. PLAINTIFFS' REMAINING ISSUES

Plaintiffs' fourth argument on appeal is that the Texas court did not have "extended home state jurisdiction" or "significant connection" jurisdiction under the UCCJEA.[8] Because we conclude, as discussed earlier, that the Texas court had jurisdiction substantially in conformity with § 206 of the UCCJEA, because it was the child's home on the date of the commencement of the Texas proceeding, we need not address this argument.

Plaintiffs' fifth argument on appeal is that the Texas court lacked jurisdiction because defendants did not have standing to intervene in Jeffrey Salter's petition for custody. We disagree.

Although the Full Faith and Credit Clause, in addition to § 303 of the UCCJEA and 28 USC 1738A, requires recognition of sister-state judgments, the con-

---

[8] Under § 201 of the UCCJEA, a state has "extended home state jurisdiction" where it "was the home state of the child within six months before the commencement of the proceeding and child is absent from this State but a parent or person acting as a parent continues to live in this State." UCCJEA § 201(a)(1); Comment, § 201. A state has "significant connection" jurisdiction where no other state has home state or extended home-state jurisdiction, or "a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum," and "the child and the child's parents, or the child and at least one parent or person acting as a parent, have a significant connection with this State other than mere physical presence," and, "substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships." UCCJEA § 201(a)(2).

stitution does not compel Michigan courts to recognize such judgments where the issuing court lacked jurisdiction over the subject matter or the parties. *Blackburne, supra* at 620-621; 28 USC 1738A(a) and (c). "[C]ollateral attack may be made in the courts of this state by showing that the judgment sought to be enforced was void for want of jurisdiction in the court which issued it." *Blackburne, supra* at 620-621 (quotation marks and citation omitted). Thus, if plaintiffs can demonstrate that the Texas court lacked personal or subject-matter jurisdiction over this matter, its child-custody order is not entitled to full faith and credit by the courts of this state.

"Standing, as a necessary component of a court's subject-matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law." *In re CMC*, 192 SW3d 866, 869 (Tex App, 2006). "If a party lacks standing, a court lacks subject-matter jurisdiction to hear a case." *Id.* Under Texas law, grandparents do not generally have standing to file an original suit requesting managing conservatorship. Tex Fam Code Ann § 102.004(a). However, under certain circumstances, a Texas court may grant a grandparent leave to intervene. Section 102.004(b) of the Texas Family Code permits a court to grant a grandparent leave to intervene in a pending, properly commenced suit where "there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development."

In this case, defendants, in their July 23, 2007, petition in intervention, alleged as follows:

*Conservatorship*

It is in the best interest of the child that Intervenors be appointed joint managing conservators of the child. Further, the appointment of the parents as joint managing

conservators would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development.

While neither the temporary restraining order issued by the Texas court following defendants' filing of their petition in intervention, nor its October 1, 2007, order granting defendants temporary custody, explicitly addresses the issue of defendants' standing to intervene, there is no basis on which this Court can conclude that the Texas court erred in allowing defendants to intervene because no record of the Texas proceedings has been provided. It is therefore not clear whether there was evidence to support a finding that "appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." Tex Fam Code Ann § 102.004(b). Accordingly, plaintiffs have not shown that the judgment of the Texas court "was void for want of jurisdiction." *Blackburne, supra* at 620-621.

Plaintiffs' final argument on appeal is that they were denied their due-process rights under the Fourteenth Amendment by virtue of the proceedings in the Texas court and that court's temporary custody order. We disagree.

Plaintiffs allege that the temporary order of the Texas court violated their due-process rights under the Fourteenth Amendment because "competent evidence was not presented to demonstrate that both parents were unfit and [to] overcome the presumption that the parent of the child is fit to raise the child" at the hearing on September 24, 2007, and they were denied the presumption that they were fit parents. They also argue that the Texas court deprived them of custody of the child on the basis of the "lone allegation" that

"[a]ppointment of the parents as joint managing conservators would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development," which "did not inform Plaintiffs as to what charges they would have to defend at the hearing on temporary custody."

As noted by the Michigan Supreme Court, the United States Supreme Court has recognized that parents have a "fundamental right" to make decisions concerning the upbringing of their children and that these decisions are entitled to deference. *DeRose v DeRose*, 469 Mich 320, 331-332; 666 NW2d 636 (2003), citing *Troxel v Granville*, 530 US 57, 66, 75, 80; 120 S Ct 2054; 147 L Ed 2d 49 (2000). However, even assuming that it is appropriate for this Court to consider whether the Texas court denied a presumption to which they were constitutionally entitled or rendered its decision without "competent evidence," we are unable to do so because plaintiffs have not provided a transcript of the Texas proceedings.

Plaintiffs also argue that, because defendants "did not file the case under the UCCJEA," they "did not give [p]laintiffs customary notice of their right to make application to appear by telephone or other electronic means pursuant to Section 111 of the UCCJEA,[9] MCL 722.1111," and, because plaintiffs lived 1,280 miles

_____

[9] Section 111 of the UCCJEA provides:

(a) In addition to other procedures available to a party, a party to a child-custody proceeding may offer testimony of witnesses who are located in another State, including testimony of the parties and the child, by deposition or other means allowable in this State for testimony taken in another State. The court on its own motion may order that the testimony of a person be taken in another State and may prescribe the manner in which and the terms upon which the testimony is taken.

from the Texas court and could not afford to travel to Texas or hire a Texas attorney, they were effectively denied the opportunity for a hearing. While it is clear that this custody dispute is governed by the UCCJEA, plaintiffs cite no authority for the proposition that defendants were required to *"file* the case under the UCCJEA"* (emphasis added), or articulate precisely what they mean by that, and although § 209 of the UCCJEA contains certain pleading requirements, the remedy for lack of such information in the pleadings is a stay of the proceedings, either upon motion of a party or the court. UCCJEA § 209(b).

Under § 108(a) of the UCCJEA, plaintiffs could properly be given notice under either Michigan or Texas rules for service of process. MCR 2.119(C)(1)(a) provides that, "[u]nless a different period is set by these rules or by the court for good cause, a written motion (other than one that may be heard ex parte), notice of the hearing on the motion, and any supporting brief or affidavits must be served . . . at least 9 days before the time set for the hearing, if served by mail." Under MCR 2.107(C) service on a party may be made by mail, and "[s]ervice by mail is complete at the time of mailing." Given plaintiffs' admission, in their brief on appeal, that they received notice of the September 24, 2007,

(b) A court of this State may permit an individual residing in another State to be deposed or to testify by telephone, audiovisual means, or other electronic means before a designated court or at another location in that State. A court of this State shall cooperate with courts of other States in designating an appropriate location for the deposition or testimony.

(c) Documentary evidence transmitted from another State to a court of this State by technological means that do not produce an original writing may not be excluded from evidence on an objection based on the means of transmission.

hearing by mail on September 7, 2007, there are no grounds to conclude that they did not receive proper notice under Michigan law.

Affirmed.