HARE v STARR COMMONWEALTH CORPORATION

Docket No. 291476. Submitted September 9, 2010, at Lansing. Decided January 4, 2011, at 9:00 a.m.

Charon Hare, personal representative of the estate of Marcel D. Hare, deceased, brought an action in the Calhoun Circuit Court against Starr Commonwealth Corporation and Selma Melvin, seeking damages following the drowning of the decedent. Starr Commonwealth had been hired by the Family Independence Agency to provide foster-care services to the decedent and Starr Commonwealth had placed the decedent in the home of foster parent Melvin. Plaintiff alleged that Melvin was negligent or grossly negligent in supervising the decedent. Frontier Insurance Company, a New York insurance company, insured Starr Commonwealth under professional-liability and general-liability insurance policies that included Melvin within the scope of their coverage and provided defense counsel for defendants under the policies. The court granted summary disposition in favor of Starr Commonwealth and dismissed it from the action. The court denied Melvin's motion for summary disposition. Melvin then informed her attorneys that she would not appear for trial and would be discharging them. The court granted Melvin's attorneys' motion to withdraw as counsel of record. Following Melvin's refusal to appear, the court entered a default judgment against Melvin. Plaintiff then filed a garnishment action against Frontier. Frontier responded, alleging that it was not indebted to Melvin and was not responsible for any part of the default judgment entered against Melvin. Frontier moved for summary disposition, arguing that the garnishment action should be dismissed on the basis of an order of rehabilitation entered by a New York court that purported to bar any and all legal actions against Frontier. Frontier contended that the circuit court was required to afford full faith and credit to the order of rehabilitation pursuant to Michigan's common law and the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.* Plaintiff filed a cross-motion for summary disposition, contending that the order of rehabilitation constituted an out-of-state antisuit injunction not entitled to legal effect beyond the territorial limits of New York, that it would violate Michigan's public policy to enforce the order of rehabilitation, that

the order was not entitled to full faith and credit or comity because plaintiff had not been subject to the personal jurisdiction of the New York court, and that enforcement of the order would negatively affect plaintiff's substantial rights. The court, Conrad J. Sindt, J., granted Frontier's motion for summary disposition, denied plaintiff's cross-motion, and dismissed plaintiff's claims against Frontier with prejudice, holding that the order of rehabilitation was entitled to full faith and credit. Plaintiff appealed.

The Court of Appeals *held*:

1. Questions concerning the applicability of the UEFJA and the Full Faith and Credit Clause of the United States Constitution are reviewed de novo by the Court of Appeals. The Court of Appeals reviews for an abuse of discretion a circuit court's decision to dismiss a case on the basis of the doctrine of forum non conveniens. The abuse-of-discretion standard governs the appellate review of a circuit court's abstention in favor of an alternative, foreign forum.

2. A foreign judgment, to be enforceable under the UEFJA, must have been entered by a court with jurisdiction over the parties and the subject matter. A sister-state judgment must constitute a final judgment on the merits in order to qualify for recognition under the Full Faith and Credit Clause.

3. The first part of the order of rehabilitation, which declares that Frontier has become insolvent, directs the New York Superintendent of Insurance to take possession of Frontier's property, and authorizes the superintendent to perform various tasks necessary to rehabilitate Frontier's business and affairs, was entitled to full faith and credit by the Michigan courts.

4. The second part of the order of rehabilitation, which provides that all persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier or obtaining preferences, judgments, and attachments or other liens against Frontier's assets, was not entitled to full faith and credit. The Full Faith and Credit Clause does not compel a forum state court to recognize and enforce a sister-state antisuit injunction.

5. There was no showing that plaintiff was ever subject to the personal jurisdiction of the courts of New York. The constitution does not compel Michigan's courts to recognize the New York order of rehabilitation as a bar to plaintiff's garnishment claim because the New York court lacked jurisdiction over plaintiff. For the same reasons, the UEFJA did not require the circuit court to recognize and enforce the antisuit provisions of the order of rehabilitation.

6. Michigan has a valid interest in the present matter and enforcement of the antisuit injunction would contravene plaintiff's rights; therefore, recognition of the antisuit injunction was not required under the traditional rules of interstate comity.

7. The circuit court should have abstained from the present garnishment action, dismissing the matter and deferring to the courts of New York on grounds similar to those underlying the doctrine of forum non conveniens.

8. Although the circuit court erred by ruling that the antisuit provisions of the order of rehabilitation were entitled to full faith and credit, it reached the correct result by denying plaintiff's motion for summary disposition and granting summary disposition in favor of Frontier. The Court of Appeals will not reverse when the circuit court has reached the correct result, even if it has done so for the wrong reason.

Affirmed.

1. APPEAL — STANDARDS OF REVIEW — UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT — FULL FAITH AND CREDIT CLAUSE — FORUM NON CONVENIENS — COMITY.

Questions concerning the applicability of the Uniform Enforcement of Foreign Judgments Act and the Full Faith and Credit Clause of the United States Constitution are reviewed de novo on appeal; decisions to dismiss a case on the basis of the doctrine of forum non conveniens or to dismiss a case that is properly within the jurisdiction of the court on the basis of pending or available litigation in an alternative, foreign forum are reviewed for an abuse of discretion (US Const, art IV, § 1; MCL 691.1171 *et seq.*).

2. JUDGMENTS — FOREIGN JUDGMENTS — PRESUMPTION OF VALIDITY — COLLATERAL ATTACKS ON JUDGMENTS.

A judgment entered in another state is presumptively valid and subject to recognition under the Full Faith and Credit Clause of the United States Constitution, although a collateral attack on such a judgment may be made in a Michigan court by showing that the judgment was void for want of jurisdiction over the subject matter or the parties in the court that issued it.

3. JUDGMENTS — UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT.

A foreign judgment, to be enforceable under the Uniform Enforcement of Foreign Judgments Act, must have been entered by a court having jurisdiction over the parties and the subject matter (MCL 691.1171 *et seq.*).

4. CONSTITUTIONAL LAW — JUDGMENTS OF SISTER STATES — FULL FAITH AND CREDIT CLAUSE.

> A sister-state judgment must constitute a final judgment on the merits in order to qualify for recognition under the Full Faith and Credit Clause of the United States Constitution (US Const, art IV, § 1).

5. CONSTITUTIONAL LAW — FULL FAITH AND CREDIT CLAUSE — ANTISUIT INJUNCTIONS OF SISTER STATES.

> The Full Faith and Credit Clause of the United States Constitution does not compel a forum state court to recognize and enforce sister-state antisuit injunctions (US Const, art IV, § 1).

6. JUDGMENTS — ORDERS — RULE OF COMITY.

> The rule of comity is not allowed to operate when it will contravene the rights of a citizen of the state where the action is brought or contravene that state's policies or interests.

*Lloyd Johnson & Associates* (by *Lloyd G. Johnson*) for Charon Hare.

*Garan Lucow Miller, P.C.* (by *Robert D. Goldstein* and *Boyd E. Chapin, Jr.*), for Frontier Insurance Company.

Before: BORRELLO, P.J., and JANSEN and BANDSTRA, JJ.

JANSEN, J. Plaintiff-garnishor, Charon Hare, personal representative of the estate of Marcel D. Hare, deceased, appeals by right the circuit court's order denying her motion for summary disposition and granting summary disposition in favor of garnishee Frontier Insurance Company (Frontier) on the ground that a New York antisuit injunction was entitled to full faith and credit. We affirm, albeit for a different reason than that relied on by the circuit court.

I

This garnishment action arises out of the drowning death of plaintiff's decedent, Marcel D. Hare (Marcel),

in the Kalamazoo River. Marcel had been in foster care with Starr Commonwealth Corporation (Starr Commonwealth) since approximately December 1, 1999. After several unsuccessful short-term placements with various foster families, Starr Commonwealth ultimately placed Marcel in the home of foster parent Selma Melvin (Melvin) on March 28, 2000. On the evening of April 15, 2000, while under the care of Melvin, Marcel jumped from a bridge over the Kalamazoo River and drowned.

On February 28, 2003, plaintiff, as personal representative of Marcel's estate, filed suit against Melvin and Starr Commonwealth in the Calhoun Circuit Court. According to plaintiff, Melvin regularly allowed Marcel to "wander the neighborhood" without adult supervision. Among other things, plaintiff alleged that Melvin had been negligent or grossly negligent by failing to properly supervise Marcel, especially given that Marcel was a special-needs child.

Frontier insured Starr Commonwealth under a professional-liability policy and a commercial, general-liability policy. These policies also included Melvin, as one of Starr Commonwealth's foster parents, within the scope of their coverage. Frontier accordingly provided defense counsel for both Melvin and Starr Commonwealth.

On October 2, 2006, defendants Melvin and Starr Commonwealth jointly moved for summary disposition. On October 25, 2006, the circuit court granted the motion for summary disposition as it related to plaintiff's claims against Starr Commonwealth, dismissing Starr Commonwealth from the action. However, the circuit allowed plaintiff's claims against Melvin to go forward and the matter was scheduled for trial.

Sometime before trial, Melvin informed her attorneys that she had decided not to appear for trial and that she would be discharging them as defense counsel. Citing a breakdown in the attorney-client relationship, Melvin's attorneys filed a motion to withdraw as counsel of record on November 3, 2006. The circuit court granted the attorneys' motion to withdraw on November 20, 2006. As she had threatened to do, Melvin refused to appear in the matter. Consequently, on December 12, 2006, the circuit court entered a default judgment against Melvin in the amount of $350,000 plus case-evaluation sanctions.

On October 24, 2008, plaintiff filed the instant garnishment action in the Calhoun Circuit Court, seeking a writ of nonperiodic garnishment against Frontier in the amount of $393,260 (the amount of the default judgment, plus costs and interest). On November 17, 2008, Frontier filed its garnishee disclosure statement, in which it alleged that it was not indebted to Melvin and was not responsible for any portion of the default judgment entered against her.

On January 5, 2009, Frontier moved for summary disposition. Frontier argued that plaintiff's garnishment action should be dismissed on the basis of a New York "order of rehabilitation," which had been entered by the supreme court of the state of New York, county of New York, on October 10, 2001, and that purported to bar any and all legal actions against Frontier. Frontier attached a copy of the New York order of rehabilitation to its motion for summary disposition. The order of rehabilitation, entered pursuant to the New York insurance law, provides that Frontier is "incorporated in New York," that Frontier is "subject to the New York Insurance Law," that Frontier has become insolvent, that Frontier has "failed to cure its impairment of

capital," and that Frontier has "consented to the entry of the order of rehabilitation[.]" The New York court determined that it was "in the best interest of Frontier's policyholders, creditors and the general public that the [New York] Superintendent [of Insurance] be directed to take possession of Frontier's property and to rehabilitate its business and affairs[.]" The order of rehabilitation directs the New York Superintendent of Insurance to "immediately take possession of [Frontier's] property," to "conduct [Frontier's] business," and to "take such other actions as set forth in . . . the New York Insurance Law." The order of rehabilitation also provides that "[a]ll persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier" and that "[a]ll persons are enjoined and restrained from obtaining preferences, judgments, [and] attachments or other liens . . . against Frontier's assets[.]" Frontier contended that the Calhoun Circuit Court was required to afford full faith and credit to the New York order of rehabilitation pursuant to Michigan's common law as well as the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.*[1]

Thereafter, plaintiff filed a cross-motion for summary disposition. Plaintiff argued that the New York order of rehabilitation constituted an out-of-state antisuit injunction that was not entitled to legal effect beyond the

---

[1] Frontier also argued that it was entitled to summary disposition for an alternative reason. Frontier asserted that Melvin's act of discharging defense counsel and failing to appear for trial violated certain provisions of the insurance policies requiring the insured to cooperate with counsel and assist in defending the action. Because Melvin had not cooperated with counsel or assisted in the defense of the matter, Frontier argued that Melvin was no longer covered under its insurance policies and that it was therefore not required to indemnify her for the default judgment entered against her in the underlying litigation.

territorial limits of the state of New York. Plaintiff further argued that it would violate Michigan's public policy for the circuit court to enforce the New York order of rehabilitation. Lastly, plaintiff argued that the order of rehabilitation was not entitled to full faith and credit or comity because she had not been subject to the personal jurisdiction of the New York courts at the time the order was entered and because the enforcement of the order in Michigan would negatively affect her substantial rights.[2]

Following oral argument, the circuit court issued a written opinion concerning the parties' respective motions for summary disposition. In that opinion, the court observed that "[t]he dispositive issue in these motions for summary disposition . . . is the effect in Michigan of a 2001 Order of the Supreme Court of the State of New York . . . which places [Frontier] in the possession of the Insurance Superintendent of the State of New York . . . and which enjoins all persons from commencing any actions and from obtaining any judgments or liens against Frontier." Relying in part on *Keehn v Charles J Rogers, Inc*, 311 Mich 416, 425; 18 NW2d 877 (1945), the circuit court ruled that it was "satisfied . . . that the 2001 New York Supreme Court Order is entitled to full faith and credit in this action and therefore that the garnishment action against [Frontier] must be dismissed." The court went on to state that "[p]laintiff['s] remedy, if any, against Frontier lies in the State of New York." On March 30, 2009, the circuit court entered a final order granting Frontier's

---

[2] With respect to Frontier's alternative argument, see footnote 1, plaintiff asserted that Melvin's failure to appear for trial had not prejudiced Frontier and had not nullified the coverage provided for Melvin under the Frontier insurance policies. Plaintiff noted that Melvin had been fully deposed in the litigation and that, although Melvin did not appear, her deposition testimony could have been used at trial.

motion for summary disposition, denying plaintiff's cross-motion for summary disposition, and dismissing plaintiff's claims against Frontier with prejudice.

II

We review de novo a circuit court's decision to grant or deny a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). We also review de novo questions concerning the applicability of the UEFJA and the Full Faith and Credit Clause of the United States Constitution. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 620; 692 NW2d 388 (2004).

The standard of review is less clear as it relates to the issue of comity. Courts use the term "comity" in several different contexts. In the traditional context, courts consider purely whether to enforce a foreign judgment as a matter of "comity." See *Hilton v Guyot*, 159 US 113, 202-203; 16 S Ct 139; 40 L Ed 95 (1895). To a large extent, this traditional notion of comity was at play in *Dart v Dart*, 460 Mich 573, 575; 597 NW2d 82 (1999), wherein the Michigan Supreme Court held that the parties' foreign judgment of divorce was entitled to enforcement in this state even though recognition of the judgment was not constitutionally mandated. In such cases, appellate courts generally appear to apply a de novo standard of review. See *Diorinou v Mezitis*, 237 F3d 133, 139 (CA 2, 2001); see also *Hilton*, 159 US at 203-229; *Dart*, 460 Mich at 580-587.

In a slightly different context, courts often speak of "comity" when considering whether to dismiss litigation properly within their jurisdiction on the basis of pending or available litigation in an alternative, foreign forum. See *Diorinou*, 237 F3d at 139 (noting, in this context, that courts frequently refer to their

"defer[ence] to the foreign tribunal's adjudication of the underlying matter [a]s a matter of 'comity' "); see also *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 625; 719 NW2d 40 (2006) (MARKMAN, J., concurring) (noting that " '[p]rinciples of judicial comity support the dismissal of controversies whose adjudication is a matter of vital interest to the alternative, foreign forum' ") (citation omitted). Although such abstention in favor of an alternative, foreign forum is sometimes described as "comity," it is more essentially akin to a dismissal on the basis of the doctrine of forum non conveniens. *Diorinou*, 237 F3d at 139. In Michigan, appellate courts review for an abuse of discretion a circuit court's decision to dismiss a case on the basis of the doctrine of forum non conveniens. *Radeljak*, 475 Mich at 603; *Hernandez v Ford Motor Co*, 280 Mich App 545, 560; 760 NW2d 751 (2008). It thus appears that a similar abuse-of-discretion standard should govern the appellate review of a circuit court's abstention in favor of an alternative, foreign forum. See *Diorinou*, 237 F3d at 139.

III

We conclude that the circuit court erred by ruling that the antisuit provisions of the New York order of rehabilitation were entitled to full faith and credit.

A

The Full Faith and Credit Clause of the United States Constitution, US Const, art IV, § 1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Pursuant to its authority to prescribe the manner of proving acts, records, and judicial proceedings under the Full Faith and Credit Clause, Congress has enacted 28 USC 1738, which provides in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such . . . records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. [28 USC 1738.]

In turn, § 3 of the UEFJA, MCL 691.1173, provides:

> A copy of a foreign judgment[3] authenticated in accordance with an act of congress or the laws of this state may be filed in the office of the clerk of the circuit court, the district court, or a municipal court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner.

"[A] judgment entered in another state is presumptively valid and subject to recognition in Michigan under the Full Faith and Credit Clause," *Poindexter v*

---

[3] The UEFJA defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state." MCL 691.1172.

*Poindexter*, 234 Mich App 316, 324-325; 594 NW2d 76 (1999), which " 'requires that a foreign judgment be given the same effect that it has in the state of its rendition,' " *Blackburne*, 264 Mich App at 620, quoting *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 406; 509 NW2d 829 (1993). "The purpose of the Full Faith and Credit Clause 'is to prevent the litigation of issues in one state that have already been decided in another.' " *LME v ARS*, 261 Mich App 273, 285; 680 NW2d 902 (2004), quoting *Martino v Cottman Transmission Sys, Inc*, 218 Mich App 54, 58; 554 NW2d 17 (1996).

"Although the Full Faith and Credit Clause requires recognition of the judgments of sister states, 'collateral attack may be made in the courts of this [s]tate by showing that the judgment sought to be enforced was void for want of jurisdiction in the court which issued it.' " *Blackburne*, 264 Mich App at 620-621, quoting *Delph v Smith*, 354 Mich 12, 16; 91 NW2d 854 (1958), in turn quoting *Johnson v DiGiovanni*, 347 Mich 118, 126; 78 NW2d 560 (1956); see also *New York ex rel Halvey v Halvey*, 330 US 610, 614; 67 S Ct 903; 91 L Ed 1133 (1947). Indeed, "the constitution does not compel Michigan courts to recognize [sister-state] judgments where the issuing court lacked jurisdiction over the subject matter or the parties." *Nash v Salter*, 280 Mich App 104, 119-120; 760 NW2d 612 (2008); see also *Blackburne*, 264 Mich App at 621. "Thus, to be enforceable under the UEFJA, the foreign judgment must have been entered by a court with jurisdiction over the parties and the subject matter." *Id*.

In order to qualify for recognition under the Full Faith and Credit Clause, a sister-state judgment must constitute a final judgment on the merits. *Alabama ex rel Governor v Engler*, 85 F3d 1205, 1209 (CA 6, 1996);

*In re Forslund*, 123 Vt 341, 344; 189 A2d 537 (1963); see also *Halvey*, 330 US at 621 (Rutledge, J., concurring).

B

"As a general rule, judgments are to be construed like other written instruments, and the legal effect of a judgment must be declared in light of the literal meaning of the language used." 46 Am Jur 2d, Judgments, § 74, p 447. It is true that the New York order of rehabilitation at issue in this case contains no language indicating that it is to be afforded extraterritorial effect beyond the boundaries of the state of New York. However, it is equally true that "a State is permitted to determine the extraterritorial effect of its judgments . . . only . . . indirectly, by prescribing the effect of its judgments within the State." *Thomas v Washington Gas Light Co*, 448 US 261, 270; 100 S Ct 2647; 65 L Ed 2d 757 (1980). "To vest the power of determining the extraterritorial effect of a State's own . . . judgments in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of . . . the Constitution to prevent." *Id.* at 272. It is therefore of little significance that the New York order of rehabilitation does not indicate on its face that it is to be afforded extraterritorial effect.

C

The New York order of rehabilitation at issue in this case actually consists of two separate parts. The first part of the order declares that Frontier, a New York insurance company, has become insolvent, directs the New York Superintendent of Insurance "to take possession of Frontier's property," and authorizes the New York Superintendent of Insurance to perform various

tasks that may be necessary to "rehabilitate [Frontier's] business and affairs[.]" It appears beyond dispute that this first portion of the New York order of rehabilitation is entitled to full faith and credit by the Michigan courts. *Keehn*, 311 Mich at 425 (affording full faith and credit to an Illinois state court judgment finding an Illinois insurance company "to be insolvent and vesting its property and assets in a receiver for liquidation"); *U S Truck Co v Pennsylvania Surety Corp*, 259 Mich 422, 424-425; 243 NW 311 (1932) (affording full faith and credit to a Pennsylvania state court judgment declaring that a Pennsylvania insurance company "was dissolved" and that "the insurance commissioner of Pennsylvania took and holds title to the corporate property").

However, the New York order of rehabilitation also consists of a second part. This second part provides that "[a]ll persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier" and that "[a]ll persons are enjoined and restrained from obtaining preferences, judgments, [and] attachments or other liens . . . against Frontier's assets[.]" There is an important distinction to be drawn between the first portion of the New York order of rehabilitation, taking control of Frontier's assets and appointing the New York Superintendent of Insurance to rehabilitate Frontier's affairs, and the second portion of the order, purporting to operate as an antisuit injunction and to bar all claims against Frontier. See *Cook v Delmarva Power & Light Co*, 505 A2d 447, 450 (Del Super, 1985). The United States Supreme Court has clarified that the Full Faith and Credit Clause applies with the same force to equitable decrees as it does to judgments at law. *Baker v Gen Motors Corp*, 522 US 222, 234; 118 S Ct 657; 139 L Ed 2d 580 (1998). But this does not necessarily mean that the Full Faith

and Credit Clause compels the recognition of out-of-state antisuit injunctions. See *id.* at 236. Indeed, "[s]tate courts that have dealt with the question have, in the main, regarded antisuit injunctions as outside the full faith and credit ambit." *Id.* at 236 n 9. One reason given for this is that antisuit injunctions generally do not constitute final judgments on the merits. See *Abney v Abney*, 176 Ind App 22, 26; 374 NE2d 264 (1978); see also Scoles & Hay, Conflict of Laws (2d ed), § 24.21, p 981. Another reason given is that, because antisuit injunctions act "upon the parties rather than [the] court, the forum has the power to proceed notwithstanding the sister-state injunction." *Abney*, 176 Ind App at 26; see also *Kleinschmidt v Kleinschmidt*, 343 Ill App 539, 546; 99 NE2d 623 (1951). But whatever the reason, it appears well settled that the Full Faith and Credit Clause does not compel a forum state court to recognize and enforce a sister-state antisuit injunction. See, e.g., *Mahan v Gunther*, 278 Ill App 3d 1108, 1116; 663 NE2d 1139 (1996); *Cook*, 505 A2d at 449; *Abney*, 176 Ind App at 26; *James v Grand Trunk W R Co*, 14 Ill 2d 356, 363-364; 152 NE2d 858 (1958).

Bearing these principles in mind, we conclude that the Full Faith and Credit Clause did not require the circuit court to recognize or enforce that portion of the New York order of rehabilitation purporting to bar "[a]ll persons" from "commencing or prosecuting any actions, lawsuits, or proceedings against Frontier," and from "obtaining preferences, judgments, [and] attachments or other liens . . . against Frontier's assets[.]" Because this portion of the order effectively operated as an antisuit injunction, it fell "outside the full faith and credit ambit." See *Baker*, 522 US at 236 n 9. Moreover, there has been no showing in this case that plaintiff was ever subject to the personal jurisdiction of the courts of New York. Because the New York Supreme Court lacked

jurisdiction over plaintiff, the constitution does not compel the Michigan courts to recognize the New York order of rehabilitation as a bar to plaintiff's present claim. *Nash*, 280 Mich App at 119-120; *Blackburne*, 264 Mich App at 621. Contrary to the circuit court's ruling, we hold that the circuit court was not compelled to give full faith and credit to the antisuit provisions of the New York order of rehabilitation.[4]

IV

Nor can we conclude that the circuit court was required to recognize and enforce the antisuit provisions of the New York order of rehabilitation pursuant to the traditional rules of interstate comity.

As explained earlier, courts use the term "comity" in a variety of different ways. See *Diorinou*, 237 F3d at 139. In the traditional context, Michigan courts have used the term "comity" when considering whether to recognize and enforce a foreign or sister-state judgment. See *Dart*, 460 Mich at 575; see also *Graydon v Church*, 7 Mich 36, 52 (1859).

At times, state courts have given recognition to sister-state antisuit injunctions, and in almost all such circumstances, recognition has been based on the doctrine of interstate comity. See *Fuhrman v United America Insurors*, 269 NW2d 842, 847 (Minn, 1978) (noting that "recognition of an [antisuit] injunction issued in another state is granted strictly as a matter of comity"); *Abney*, 176 Ind App at 27 (observing that "in those instances where deference has been extended [to sister-state antisuit injunctions,] it has been based on

---

[4] For the same reasons, the UEFJA did not require the circuit court to recognize and enforce the antisuit provisions of the New York order of rehabilitation. *Blackburne*, 264 Mich App at 621.

comity rather than on the constitutional command of Full Faith and Credit"). At the same time, however, it has frequently been stated that "the rules of comity *do not require*" recognition of foreign antisuit injunctions. *Id.* at 27-28 (emphasis added).

Comity is a discretionary doctrine. See *Hilton*, 159 US at 163-164 (explaining that " '[c]omity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other"); see also *Lieberthal v Glens Falls Indemnity Co of Glens Falls*, 316 Mich 37, 54; 24 NW2d 547 (1946) (BUTZEL, C.J., dissenting) (noting that when " 'comity' enters . . . the discretion of the forum is greater"). In general, the doctrine of comity commands that "[t]he courts of a sister state, in a cause and between parties within their jurisdiction, are entitled to so much respect, at least, that [the Michigan courts] should not, without proof, presume them guilty of wrong and oppression." *Graydon*, 7 Mich at 52. But it is well settled that "[t]he rule of comity is not allowed to operate when it will contravene the rights of a citizen of the State where the action is brought." *Keehn*, 311 Mich at 425; see also *Baldwin v Circuit Judge*, 101 Mich 119, 133; 59 NW 432 (1894). Nor will our courts recognize a sister-state judgment under the rules of comity when doing so would contravene this state's policies or interests. *Kircher v Kircher*, 288 Mich 669, 671; 286 NW 120 (1939), questioned in part on other grounds *Hosko v Hosko*, 385 Mich 39 (1971).

As noted previously, there has been no showing in this case that plaintiff was ever subject to the personal jurisdiction of the courts of New York. Furthermore, recognition of the New York antisuit injunction, requiring dismissal of the present action, would certainly contravene the rights of plaintiff—a citizen of this state.

See *Keehn*, 311 Mich at 425. Finally, it cannot be gainsaid that Michigan has a real interest in the present action. After all, the present garnishment action has been brought by a citizen of this state and arises out of a drowning death that occurred within this state as well. For these reasons, we conclude that Michigan has a valid interest in the present action, that enforcement of the New York antisuit injunction would contravene plaintiff's rights in this case, and that recognition of the antisuit injunction is therefore not required under the traditional rules of interstate comity.

V

Nevertheless, we find that the circuit court should have abstained from the present controversy, deferring to the courts of New York on grounds similar to those underlying the doctrine of forum non conveniens.

As explained earlier, abstention in favor of an alternative, foreign forum has often been described as a species of "comity." See, e.g., *Radeljak*, 475 Mich at 625 (MARKMAN, J., concurring) (noting that " '[p]rinciples of judicial comity support the dismissal of controversies whose adjudication is a matter of vital interest to the alternative, foreign forum' "); *Cook*, 505 A2d at 449 (stating that " '[i]f a court stays pending proceedings or abates an action by reason of a foreign anti-suit injunction, it does so solely on the ground of comity, and not because the Federal Constitution requires it so to act' ") (citation omitted). However, as explained by the United States Court of Appeals for the Second Circuit, when courts abstain on such a ground and defer to an alternative, foreign forum, "they are invoking a doctrine akin to forum non conveniens." *Diorinou*, 237 F3d at 139 (italics omitted); see also *Lexington Ins Co v Forrest*, 263 F Supp 2d 986, 1002 (ED Pa, 2003) (observ-

ing, albeit in the international context rather than the interstate context, that principles of comity "[s]imilar to the doctrine of forum non conveniens" permit a court "to exercise its discretion and dismiss a case over which it has subject matter jurisdiction in deference to the laws and interests of another [forum]").

" 'Forum non conveniens' is defined as the 'discretionary power of [a] court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum.' " *Radeljak*, 475 Mich at 604, quoting Black's Law Dictionary (6th ed). It is a common-law doctrine that allows a court to decline to hear a case even though the court otherwise has jurisdiction. *Radeljak*, 475 Mich at 604. Among the relevant factors to be considered in deciding whether to dismiss an action on the basis of forum non conveniens are " 'the state law which must govern the case' " and the " '[p]eople who are concerned by the proceeding.' " *Id.* at 606, quoting *Cray v Gen Motors Corp*, 389 Mich 382, 396; 207 NW2d 393 (1973). It has been held that the doctrine of forum non conveniens may be raised sua sponte by the court. *Commonwealth Land Title Ins Co v Pugh*, 555 NW2d 576, 579 (ND, 1996); *Haynes v Carr*, 379 A2d 1178, 1180 (DC App, 1977).

Frontier is an insolvent New York insurance company that is subject to the New York insurance laws. Through the order of rehabilitation at issue in this case, the New York Supreme Court has placed its imprimatur on the complicated and intricate process of rehabilitating Frontier's affairs and restructuring Frontier's business operations. This process, which is carried out in accordance with the laws of the state of New York and under the direction of the New York Superintendent of Insurance, does not fall within the general experience of

the Michigan courts. In contrast, the courts of New York are in a superior position to enforce New York's insurance laws, and New York certainly has substantial experience with its own process of rehabilitating insolvent insurers. Moreover, New York presumably has good reason for enjoining lawsuits against insolvent insurance companies like Frontier during the rehabilitation period, and principles of interstate comity persuade us to respect New York's decision with respect to this issue. *Graydon*, 7 Mich at 52. It is not the place of the Michigan courts to second-guess New York's insurance laws or to undermine New York's rehabilitation procedures.

Allowing plaintiff's instant garnishment action to go forward would tend to undermine New York's attempt to rehabilitate Frontier Insurance Company—a process that has already been ongoing for several years. Given the complexity of New York's insurance laws and the purpose of New York's rehabilitation process for insolvent insurers, we conclude that the circuit court should have abstained from the present garnishment action, dismissing the matter and deferring to the courts of New York on grounds similar to those underlying the doctrine of forum non conveniens. See *Radeljak*, 475 Mich at 625 (MARKMAN, J., concurring).

VI

In sum, while the circuit court erred by ruling that the antisuit provisions of the New York order of rehabilitation were entitled to full faith and credit, it reached the correct result by denying plaintiff's motion for summary disposition and granting summary disposition in favor of Frontier. Although the circuit court employed incorrect reasoning in this case, it correctly observed that "[p]laintiff['s] remedy, if any, against

Frontier lies in the State of New York." It is well settled that we will not reverse when the circuit court has reached the correct result, even if it has done so for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

In light of our resolution of the issues, we need not consider plaintiff's argument concerning *Frontier Ins Co v Blaty*, 454 F3d 590 (CA 6, 2006). Nor need we consider the alternative ground for affirmance raised by Frontier on appeal.

Affirmed. No taxable costs pursuant to MCR 7.219, a public question having been involved.